Approved: _____
EMILY DEININGER
Assistant United States Attorney

Before:   HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :    **COMPLAINT**

                                     Violation of
     - v. -                     :    18 U.S.C. § 371

COLIN BURNETT,                  :    COUNTY OF OFFENSE:
   a/k/a "Greg,"                     WESTCHESTER

                                :    19mj4709
           Defendant.

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      KEVIN M. GONYO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Receive, Possess, and Sell Stolen Vehicles)

      1.  From in or about June 2018 through in or about November 2018 in the Southern District of New York and elsewhere, COLIN BURNETT, a/k/a "Greg," the defendant, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to receive, possess, and sell stolen vehicles, in violation of Title 18, United States Code, Section 2313.

      2.  It was a part and an object of the conspiracy that COLIN BURNETT, a/k/a "Greg," the defendant, and others known and unknown, would and did receive, possess, conceal, store, barter, sell, and dispose of stolen motor vehicles, which had crossed a State or United States boundary after being stolen, in interstate commerce, knowing the same to be stolen, in violation of Title 18, United States Code, Section 2313.

**OVERT ACTS**

3.      In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York:

a.      On or about October 15, 2018, COLIN BURNETT, a/k/a "Greg," the defendant, exchanged a series of text messages with a co-conspirator not named herein ("CC-1") in which they discussed CC-1 purchasing a fake title for a blue Dodge Charger Hellcat.

b.      On or about October 30, 2018, BURNETT sent CC-1 a United States Postal Service Priority Mail package containing two fake Georgia titles for cars and a fake Georgia driver's license.

(Title 18, United States Code, Section 371)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.      I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based upon that experience, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

BACKGROUND

5.      Beginning in or about March 2018, the New York State Police ("NYSP") began investigating a multi-state scheme involving the transportation and sale of stolen vehicles. Since in or about May 2018, the NYSP has been jointly conducting that investigation with the FBI.

6.      As part of that investigation, from on or about September 4, 2018 through on or about September 28, 2018, other law enforcement officers and I intercepted telephone calls and text messages over a phone used CC-1, pursuant to a court-authorized wiretap. The investigation also included and yielded,

among other things, physical surveillance, cell site data, interviews of victims, records of online advertisements and transactions, and data recovered from electronic devices.

7. On or about November 6, 2018, the Honorable Lisa Margaret Smith, United States Magistrate Judge, Southern District of New York, authorized a complaint charging CC-1 and six other defendants with transportation and sale of stolen vehicles and conspiracy to do the same, in violation of Title 18, United States Code, Sections 371, 2312, 2313, and 2. Arrest warrants were also issued, and, CC-1, amongst others, was arrested on or about November 8, 2018.

8. As set forth below, there is probable cause to believe that COLIN BURNETT, a/k/a "Greg," the defendant, and others known and unknown, conspired with CC-1 and others known and unknown to operate a stolen car ring, during which they (1) obtained stolen vehicles from, among other places, Michigan and Florida; (2) transported the stolen vehicles to, among other places, the Southern District of New York and Connecticut, for resale; (3) created and/or obtained false titles, registrations, and temporary license plates for stolen vehicles; (4) used the false vehicle records to deceive (a) buyers of the stolen vehicles, and/or (b) the South Dakota Department of Motor Vehicles ("SDDMV"), among other places, to obtain new titles and registrations for the stolen vehicles; and (5) used online markets, among other things, to solicit purchasers of the stolen vehicles in various states, including in the Southern District of New York.

9. In particular, based on my review of communications exchanged between COLIN BURNETT, a/k/a "Greg," the defendant, and CC-1,[1] I believe that there is probable cause to believe that

---

[1] These communications were extracted from a cellphone used by CC-1 pursuant to a search warrant authorized by Judge Smith on November 6, 2018. Based on information provided by CC-1, I believe that two of the cellphone numbers, ending in 2578 and 7183, that were in communication with CC-1 are used by COLIN BURNETT, a/k/a "Greg," the defendant. Specifically, CC-1 has informed me that CC-1 has communicated with Burnett using both of those phone numbers, and I have reviewed copies of text messages between CC-1 and BURNETT, who was using those numbers, on a phone used by CC-1.

Since his arrest, CC-1 has been cooperating with law enforcement in exchange for potential judicial leniency with regard to the pending charges. CC-1 has provided information that has been corroborated, including by information obtained in this investigation from intercepted communications and seizures from search warrants, and has

3

BURNETT, the defendant, supplied fake titles to CC-1 to facilitate his possession and sale of stolen vehicles in, among other locations, the Southern District of New York and Connecticut.

10. The investigation to date has revealed that by this criminal scheme COLIN BURNETT, a/k/a "Greg," the defendant, and others known and unknown have obtained, transported, and sold or attempted to sell approximately sixty vehicles worth, in total, approximately $3,700,000.

I. **COLIN BURNETT, a/k/a "Greg" the Defendant, Provided CC-1 with Fake Documents for Vehicles and a Fake Driver's License**

11. Based on information provided by CC-1,[2] I know that COLIN BURNETT, a/k/a "Greg," the defendant, provided CC-1 with approximately 15 to 25 fake titles for cars, and that CC-1 paid BURNETT approximately $500 to $700 per title.

12. On or about June 27, 2018, COLIN BURNETT, a/k/a "Greg," the defendant, and CC-1 exchanged a series of text messages. At the beginning of that exchange, BURNETT wrote that "the balance is $482 for 10 total and shipping today." CC_1 then responded that BURNETT should "[m]ail them out today." Based on my training, experience, and participation in this investigation, I believe that the "10 total" BURNETT referred to was ten fake titles for cars.

13. The next day, CC-2 wrote to COLIN BURNETT, a/k/a "Greg," the defendant, asking if "[t]hose titles will be here tomorrow for sure." BURNETT responded, "Yes sir no . . . doubt."

14. On or about August 31, 2018, COLIN BURNETT, a/k/a "Greg," the defendant, and CC_-1 exchanged a series of text messages. In that exchange, CC-1 told BURNETT, among other things, that he was "limited to where I can use your stuff." BURNETT responded, in part, that "I have 2 other states if you'd like to switch it up." Based on my training, experience, and participation in this investigation, I believe that CC-1 was representing to

---

been proven reliable.

[2] As previously noted, since his arrest, CC-1 has been cooperating with law enforcement in exchange for potential judicial leniency with regard to the pending charges. CC-1 has provided information that has been corroborated, including by information obtained in this investigation from intercepted communications and seizures from search warrants, and has been proven reliable.

BURNETT that the titles provided by BURNETT could be identified as fake and so could only be used for limited purposes, and that BURNETT was offering to provide fake titles purporting to be from two other, different states, if needed.

15. On or about October 15, 2018, CC-1 requested, via text message, that COLIN BURNETT, a/k/a "Greg," the defendant, provide a title for a "blue Dodge Charger hellcat 700 miles" with a VIN ending 8036 and that BURNETT mail that to him in a package addressed to a name similar to that of CC-1.

16. On or about October 25, 2018, CC-1 requested, via text message, that COLIN BURNETT, a/k/a "Greg," the defendant, provide him with a document for a "Francis Duarte." CC-1 wrote in the text message that the document should identify Duarte as residing at an address in Richmond Hill, Georgia.

17. On or about November 8, 2018, in connection with the arrest of CC-1, a 2018 blue Dodge Charger Hellcat bearing VIN ending 7036 and South Dakota license plate number #32X965 (the "Hellcat") was seized pursuant to a search and seizure warrant issued on November 7, 2018 by Magistrate Judge Smith. Based on my conversations with a New York State Police Trooper and my review of records obtained from the SDDMV, I know that, on or about October 19, 2018, CC-1 had registered the Hellcat with the SDDMV using a false Georgia title bearing the same VIN ending in 8036 that CC-1 had texted to COLIN BURNETT, a/k/a "Greg," the defendant, which is an invalid VIN number.

18. On or about November 8, 2018, a search warrant was executed for a residence in Torrington, Connecticut used by CC-1 (the "CC-1 Residence").³ Based on my participation in this investigation, conversations with an FBI Special Agent who participated in the execution of the search warrant, and review of the evidence seized during that search, I know that, among other things, a United States Postal Service Priority Mail package dated October 30, 2018 and addressed to a name similar to the name of CC-1 was recovered from the CC-1 Residence. That package contained two fake Georgia titles for a Lamborghini and a Ford Expedition, as well as a fake Georgia driver's license under the name of "Francis Duarte," who, according to that driver's license, purportedly resided at the address in Richmond Hill, Georgia that had been included in CC-1's October 25, 2018 text message to COLIN

---

³ That search warrant was authorized on or about November 6, 2018 by the Honorable Holly B. Fitzsimmons, United States Magistrate Judge, District of Connecticut.

BURNETT, a/k/a "Greg," the defendant. The return address on the package was for a residential address in Atlanta, Georgia.

**II. COLIN BURNETT, a/k/a "Greg," the Defendant, Sells Stolen Cars**

19. On or about July 13, 2018, COLIN BURNETT, a/k/a. "Greg," the defendant, and CC-1 exchanged a series of text messages that included, in substance and in part, the following information:

   a. At the beginning of the exchange, BURNETT told CC-1 that "I got a few cars but I need more."

   b. BURNETT then wrote "I know you said just send you a title and you can mail me back my stuff but don't I need to flip the phone number on the car first?"

   c. Approximately twelve minutes later, CC-1 responded that he could provide a "package deal" with "numbers everything" that BURNETT could use to "walk into your local DMV and register."

   d. BURNETT then asked whether it was "legit paperwork or replicas," and CC-1 answered that it was "legit."

   e. Based on my training, experience, and participation in this investigation, I believe that when BURNETT asked about "flip[ping] the phone number on the car," he was referring to the need to re-VIN a stolen vehicle. I further believe that, in this exchange, CC-1 was offering to use fake titles provided by BURNETT to obtain new titles and registration from the SDDMV — the "legit" paperwork — for cars in BURNETT'S possession.

**III. May 14, 2019 Attempted Sale of a Stolen Car and Fake Driver's License**

20. In or about April 2019 and May 2019, CC-1, at the direction of law enforcement, engaged in a series of text messages and phone conversations with COLIN BURNETT, a/k/a "Greg," the defendant, regarding the potential purchase of stolen cars and a fake driver's license.

21. Based upon my conversations with CC-1, review of text messages on a phone used by CC-1 that CC-1 exchanged with COLIN BURNETT, a/k/a "Greg," the defendant, and review of recordings of phone calls between BURNETT and CC-1, I know the

following:

    a. On or about April 14, 2019, BURNETT, who was using a phone number ending 2578, exchanged a series of text messages with CC-1, regarding a Maserati bearing a VIN ending in 4108 (the "Maserati"). In that exchange, BURNETT told CC-1, in substance and in part, that he "need[ed] some phone numbers for my cars," including the Maserati. After CC-1 told BURNETT that he "need[]ed the original vin" "[t]o match the package," BURNETT sent CC-1, via text message, a picture of the VIN ending 4108 from the dashboard of the Maserati. CC-1 then asked BURNETT if the cars were "for u personally," and BURNETT answered that he was "[t]ryna flip em."

    b. Later that same day, BURNETT asked CC-1 in a text message if CC-1 wanted to buy the Maserati.

    c. BURNETT and CC-1 subsequently arranged, through text messages and phone calls, for CC-1 to purchase the Maserati for between approximately $10,000 and $15,000, which would include "[t]he flip" and a fake driver's license for CC-1. Based on my training, experience, and participation in this investigation, I believe that the "flip" referred to a fake title for the car being sold.

    d. BURNETT agreed with CC-1 that he would have the Maserati delivered from Georgia to the Southern District of New York. BURNETT further told CC-1 that he would personally come from Atlanta, GA to the Southern District of New York to facilitate the transaction and pick up the cash from CC-1.

    e. On or about May 8, 2019, BURNETT wrote, in a text message to CC-1, that he would "bring the title with the new vin numbers" with him when they met to complete the transaction.

    f. On or about May 9, 2019, CC-1 sent a photo of himself in a text message to BURNETT, writing that it was "for the . . . ID." BURNETT responded, "[g]ot it." CC-1 then asked if BURNETT could "[p]ut me for Texas" using "[a]ny name and all the info u know the deal."

    22. Based on my review of search results for the Maserati in the FBI's National Crime Information Center database, I know that the Maserati was reported stolen by the Norcross Police Department of Norcross, Georgia.

    23. Based on my participation in physical surveillance

conducted on or about the evening of May 14, 2019, I know that CC-1 met with COLIN BURNETT, a/k/a "Greg," the defendant, in the parking lot of a retail store in New Rochelle, New York. For purposes of this meeting, CC-1 was equipped with an audio recording device that also transmitted audio to myself and other law enforcement officers participating in the physical surveillance. Based on my conversations with CC-1 and those audio transmissions, I know that the following occurred during that meeting:

      a. BURNETT told CC-1, in substance and in part, that the cars he wanted to sell CC-1, including the Maserati, had been delayed in transit and were still a few hours away from New York;

      b. BURNETT also told CC-1, in substance and in part, that he did not have the fake driver's license on him that CC-1 had ordered, but that he would mail it to CC-1 after he returned to Georgia;

      c. BURNETT opened an Apple MacBook laptop and showed CC-1, on that laptop, how he had forms for titles from various states that could be altered as desired to include new information; and

      d. BURNETT provided CC-1 with three titles for cars.

    24. COLIN BURNETT, a/k/a "Greg," the defendant, was then arrested and transported to the FBI Resident Agency located in Rye, New York, where he was read his *Miranda* rights. BURNETT then agreed that he was willing to speak to law enforcement officers, including myself. During that interview, which was video recorded, BURNETT said, in substance and in part, the following:

      a. He sells fake titles for cars, sells stolen cars, and makes and sells fraudulent forms of identification; and

      b. He works with individuals that operate out of a residence located in Stone Mountain, Georgia, who re-VIN cars.

    25. Based on my review of the three purported titles that COLIN BURNETT, a/k/a "Greg," the defendant, provided to CC-1 yesterday, I know that:

      a. One of the titles purported to be for a 2014 Maserati registered in South Carolina, and listed an invalid VIN

ending in 4632.

        b.   The other titles purported to be for a 2019 Dodge Challenger. One had the appearance of a Tennessee title, and the other had the appearance of an Arkansas title. Both listed an invalid VIN ending in 4710.

        WHEREFORE, deponent prays that COLIN BURNETT, a/k/a "Greg," the defendant, be imprisoned, or bailed, as the case may be.

                                      _____
                                      KEVIN M. GONYO
                                      Special Agent
                                      Federal Bureau of Investigation

Sworn to before me this
15th day of May, 2018

_____
HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK